**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CAROLYN FISCHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:26-cv-12458** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE RIVERSIDE FOUNDATION,** | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Carolyn Fischer ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against The Riverside Foundation ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), seeking redress for Defendant's disability-based discrimination, disability-based harassment, failure to accommodate Plaintiff's disability, and retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit further arises under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA"), seeking redress for Defendant's retaliation against Plaintiff for using FMLA leave.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) as the ADA and FMLA are federal statutes. Jurisdiction is further conferred by 42

U.S.C. § 12117(a), which incorporates 42 U.S.C. § 2000e-5, as to Plaintiff's ADA claims, and by 29 U.S.C. § 2617(a)(2) as to Plaintiff's FMLA claims.

4. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because the alleged unlawful employment practices occurred here.

5. Venue also properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b), including as to Plaintiff's FMLA claim, because Defendant resides in this judicial district, maintaining its business address at 14588 IL-22, Lincolnshire, Illinois 60069, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## ADMINISTRATIVE PREREQUISITES

6. All conditions precedent to suit under the ADA have occurred or been satisfied.

7. On or about May 29, 2026, Plaintiff filed Charge No. 440-2026-07764 with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Illinois Department of Human Rights, attached hereto as Exhibit "A."

8. On or about September 3, 2026, Plaintiff received a Notice of Right to Sue from the EEOC (Exhibit B).

9. Plaintiff filed this Complaint within ninety (90) days of her receipt of the EEOC's Notice of Right to Sue.

## PARTIES

10. Plaintiff, Carolyn Fischer, is an individual and resident of Lake County, Illinois.

11. Defendant, The Riverside Foundation, is an Illinois not-for-profit corporation doing business at 14588 IL-22, Lincolnshire, Illinois 60069, in Lake County.

12. At all times relevant, Plaintiff was an employee and Defendant was an employer within the meaning of the ADA and the FMLA.

13. At all times relevant, Defendant employed at least fifteen (15) employees and was a covered employer under the ADA.

14. At all times relevant to Plaintiff's FMLA claims, Defendant was an employer within the meaning of the FMLA and employed fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite.

## BACKGROUND FACTS

15. Plaintiff was employed by Defendant as a Kitchen Aid from on or about February 12, 2002 until her termination on or about March 30, 2026.

16. Plaintiff suffers from a physical impairment, a hernia condition, which has resulted in a 10-pound lifting restriction for approximately five years.

17. Defendant knew of Plaintiff's disability because Defendant allowed Plaintiff to continue working in its kitchen for years with her 10-pound lifting restriction in place.

18. Defendant also regarded Plaintiff as having a physical impairment and took the actions alleged herein because of her actual or perceived impairment.

19. At all times relevant to Plaintiff's FMLA claims, Plaintiff had been employed by Defendant for at least twelve (12) months.

20. During the twelve (12) months preceding Plaintiff's need for leave, Plaintiff worked at least 1,250 hours for Defendant.

21. When Plaintiff's FMLA leave began in or around December 2025, Plaintiff had FMLA leave available under Defendant's applicable twelve-month leave period.

22. Plaintiff required surgery related to an ulcer and medical leave to recover from that surgery.

23. Plaintiff's lifting restriction never caused performance issues or resulted in discipline.

24. On or about December 4, 2025, Plaintiff underwent surgery related to an ulcer.

25. Plaintiff initially used accrued paid time off, vacation, and sick time for her medical leave before transitioning to FMLA leave in or around December 2025.

26. On or about February 12, 2026, Plaintiff attended a final medical examination with her treating physician.

27. During that examination, Plaintiff's treating physician cleared Plaintiff to return to work effective March 31, 2026.

28. Plaintiff's treating physician did not give Plaintiff any new restrictions.

29. On or about February 12, 2026, Plaintiff's treating physician's office faxed documentation regarding Plaintiff's return to work to Defendant's Human Resources representative, Daisy.

30. In or around late February 2026, approximately two weeks after Plaintiff received medical clearance, Plaintiff's Kitchen Director, Katrina Piezonka ("Piezonka"), informed Plaintiff that she would be required to undergo another medical examination at a separate clinic selected by Defendant.

31. Defendant did not permit Plaintiff to use her own doctor for that examination, and required Plaintiff to travel a significant distance to attend it.

32. On or about February 27, 2026, Defendant sent Plaintiff a letter, signed by Mark Ingrum ("Ingrum"), stating that Plaintiff's FMLA leave had been exhausted as of February 25,

2026, and that her leave status would transition to a personal leave during which she would use her available paid time off.

33. Defendant's February 27, 2026 letter stated that Defendant would revisit Plaintiff's status prior to March 30, 2026, the date on which Plaintiff's sick time and paid time off would be exhausted.

34. On or about March 27, 2026, Plaintiff attended the examination at CWP Express Care in Libertyville, Illinois, the clinic Defendant selected.

35. During that examination, a nurse informed Plaintiff that Defendant had specifically requested a lifting test.

36. Plaintiff lifted approximately 15 pounds during the examination, which caused her pain.

37. The examination paperwork referenced Plaintiff's hernia condition.

38. The examination paperwork imposed a 15-pound lifting restriction.

39. In or around late March 2026, shortly after the examination, Plaintiff learned that the 10-pound lifting restriction under which she had worked for years was no longer reflected in her file.

40. Plaintiff questioned Katrina Piezonka about the missing lifting restriction.

41. Katrina Piezonka told Plaintiff that there was nothing in Plaintiff's file reflecting her prior restrictions.

42. Plaintiff had worked under her 10-pound lifting restriction for several years, and Defendant disregarded or altered Plaintiff's prior records reflecting that restriction in an effort to justify adverse action against Plaintiff because of her disability and her use of medical leave.

43. On or about March 30, 2026, Katrina Piezonka sent Plaintiff a text message stating that, due to the examination results, Plaintiff was "not qualified to work."

44. Defendant did not explain why Plaintiff could no longer perform a job she had performed for years under the same or a similar lifting restriction.

45. Defendant terminated Plaintiff's employment on or about March 30, 2026.

46. Plaintiff attempted to contact Katrina Piezonka by text message and telephone to obtain clarification and to discuss returning to work.

47. Plaintiff received no response to her communications.

48. In her communications with Katrina Piezonka, Plaintiff sought to return to her Kitchen Aid position under the same lifting restriction she had worked under for approximately five years.

49. Defendant never discussed with Plaintiff any accommodation that would have allowed her to return to work, and denied her the accommodation she sought.

**COUNT I**
**Violation of the Americans with Disabilities Act**
**(Disability-Based Discrimination)**

50. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

51. Plaintiff was disabled within the meaning of the ADA, in that her hernia condition substantially limits major life activities, including lifting, and was qualified to perform the essential functions of her position with or without reasonable accommodation.

52. Plaintiff met the obligations of her job duties.

53. Defendant intentionally discriminated against Plaintiff because of her disability by terminating her employment, in violation of the ADA.

54. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

55. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, mental anguish, inconvenience, and loss of enjoyment of life.

## COUNT II
### Violation of the Americans with Disabilities Act
### (Disability-Based Harassment - Hostile Work Environment)

56. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

57. Defendant subjected Plaintiff to disability-based harassment by requiring an additional medical examination and lifting test, denying any record of her longstanding restriction, and telling her she was "not qualified to work."

58. The harassment was unwelcome, subjectively and objectively offensive, and severe or pervasive enough to alter Plaintiff's employment conditions and create an abusive working environment.

59. The harassment was committed by Kitchen Director Katrina Piezonka, whom Defendant empowered to take tangible employment actions against Plaintiff, and culminated in Plaintiff's termination.

60. Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

61. By virtue of the conduct alleged herein, Defendant harassed Plaintiff because of her disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

62. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

63. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, mental anguish, inconvenience, and loss of enjoyment of life.

## COUNT III
**Violation of the Americans with Disabilities Act**
**(Failure to Accommodate)**

64. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

65. Plaintiff was a qualified individual with a disability.

66. Defendant was aware of Plaintiff's disability and need for reasonable accommodation.

67. Plaintiff requested the reasonable accommodation of continuing to work as a Kitchen Aid under the lifting restriction that Defendant had accommodated for approximately five years.

68. Plaintiff's requested accommodation would have enabled her to perform the essential functions of her position.

69. Defendant failed to provide Plaintiff a reasonable accommodation.

70. Defendant failed to engage with Plaintiff in an interactive process to identify an appropriate accommodation for her lifting restriction. Had Defendant engaged in that process, it would have identified continued work as a Kitchen Aid under a lifting restriction, which was available to Defendant. Defendant's failure to engage in that process is what prevented Plaintiff from obtaining that accommodation.

71. By virtue of the conduct alleged herein, Defendant failed to accommodate Plaintiff's disability in violation of the ADA, 42 U.S.C. § 12101 *et seq*.

72. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

73. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, mental anguish, inconvenience, and loss of enjoyment of life.

**COUNT IV**
**Violation of the Americans with Disabilities Act**
**(Retaliation)**

74. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

75. Plaintiff engaged in protected activity under the ADA by questioning Defendant about the missing record of her longstanding lifting restriction, and Defendant knew of this activity.

76. Plaintiff's protected activity was a but-for cause of Defendant's termination of her employment.

77. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff in violation of the ADA, 42 U.S.C. § 12203.

78. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

79. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits.

**COUNT V**
**Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)**
**(FMLA Retaliation)**

80. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

81. Plaintiff was eligible for FMLA leave, gave Defendant notice of her need for leave, and used FMLA leave with Defendant's knowledge.

82. Plaintiff's use of FMLA leave was a negative factor in Defendant's decision to terminate her employment.

83. Defendant retaliated against Plaintiff for exercising her FMLA rights in violation of 29 U.S.C. § 2615.

84. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits, and is entitled to damages recoverable under 29 U.S.C. § 2617.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. Back pay and other lost compensation;

b. Payment of interest on all recoverable back pay and other monetary losses;

c. Front pay;

d. Lost employment benefits;

e. Compensatory and punitive damages on Counts I, II, and III, to the extent authorized by law;

f. Liquidated damages under the FMLA;

g. Appropriate declaratory and equitable relief;

h. Reasonable attorneys' fees and costs to the extent authorized by law;

i. Prejudgment and post-judgment interest to the extent authorized by law; and

j. Any other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 11, 2026.

***/s/ Yasmeen Elagha, Esq.***

Yasmeen Elagha, Esq.
Mohammed O. Badwan, Esq.
Atlas Law Center, Ltd.
2500 South Highland Avenue,
Suite 200,
Lombard, Illinois 60148
Phone (630) 575-8181
Fax (630) 575-8188
yelagha@atlaslawcenter.com
mbadwan@atlaslawcenter.com
*Attorneys for Plaintiff*